Eaton *v.* Cook.

## EATON *vs.* COOK and others.

1. It is not necessary to a trust that there should be any transfer of property, whether the fund be in the possession of the donor or of another. The property may still remain as it was, and the donor may constitute himself as the possessor, trustee of it.

2. If a person, by a written instrument, or by word, directs his debtor to hold the money due, in trust for a third person, and such direction is communicated to the debtor, an effectual trust in favor of the donee is created, especially where, as in this case, the debtor has acted on the direction and consented to the arrangement.

3. In construing a declaration of trust: "I hereby cancel the above bond and give it voluntarily to Mrs. J. C. and her heirs," verbal declarations of the donor, made prior to and contemporaneously with the gift, and relating to it, are competent evidence as to whom she meant to designate by the words "her heirs."

On final hearing on pleadings and proofs.

*Mr. E. A. S. Man* and *Mr. B. Williamson,* for complainant.

*Mr. A. G. Richey,* for defendant.

Eaton *v.* Cook.

THE CHANCELLOR.

The complainant files his bill to establish as against the defendant, Dr. Lewis C. Cook, his step-father, and in favor of himself and the defendants, James A. Eaton, his brother, and Silas P. Cook, his half-brother, a trust as to a sum of money, in the bill alleged to be $10,000, but which appears in fact to be $8500. He alleges that this money was placed in the hands of his step-father by the complainant's grandmother, Mary A. Hall, in 1855, in trust for her daughter, Janet Cook, the complainant's mother, then the wife of the defendant, Lewis C. Cook, and her children, to use and apply the interest of it to the support of the family of said Lewis and Janet, and on the death of the latter, to pay over the principal in equal shares to her children. Mrs. Cook died in 1861 or 1862, leaving three children, the complainant, and his brother and half-brother above mentioned. The defendants, Lewis C. Cook and James Eaton, have answered, the former denying, and the latter alleging the existence of the trust. The defendant, Silas P. Cook, has not answered. The evidence taken in the cause consists of the testimony of certain witnesses sworn on behalf of the complainant, and the bond hereinafter mentioned, and a letter from the defendant, Lewis C. Cook, to the complainant's aunt, exhibits for the complainant. The answer of Dr. Cook, while it denies that at the time mentioned in the bill he received $10,000, or any other sum from Mrs. Hall on the trust or condition alleged in the bill, or on any trust, states, that in 1852 he married Janet Eaton, then a widow with two children, the complainant and defendant, James A. Eaton, by her then late husband, and that he has had by her one child, the defendant, Silas P. Cook; that for five years after his marriage with her, her sons, Louis and James, being then of tender years, were supported by him, at his expense ; that Mrs. Hall visited his house after the marriage, and manifested an earnest desire for the welfare of his wife and himself; that on or about the first of June, 1857, she loaned to him and his wife $10,000, for which they gave to

her their joint bond, payable in ten years from its date with lawful interest, payable annually; that afterwards, and in November of the same year, Mrs. Hall, at her residence in the city of New York, told him, that she did not wish that he and his wife should be required to repay that money which she had so loaned to them, and producing the bond, she then and there, in his presence, cancelled it by tearing off the seals, and declared that she gave the money secured thereby to her daughter, his wife; and she then, he states, made an "endorsement," in writing, on the bond to that effect. The answer further states, that after the cancellation of the bond the money was used by him and his wife as their own, some of it in family expenses, and some in the purchase of real estate, the title to which he took in his own name, and he claims that the money so invested, having been thus used in the lifetime of his wife and incorporated with his own estate became his property. He offers no proof in support of his answer. The transaction set forth in the answer is clearly the same to which the bill refers, although the time when it occurred is erroneously stated in the latter. Dr. Cook is in error as to the amount of the bond. It appears to have been $8500 instead of $10,000. The difference is accounted for by Mrs. Hall in her testimony. The loan, she says, was in bank stock, and Dr. Cook sold it and professed to have realized upon it, only $8500. That he received this money from his mother-in-law, Dr. Cook admits. He admits also that he never repaid it, or any part of it. He denies the trust, and alleges that the money secured by the bond was given by his mother-in-law to his wife. It appears that when Mrs. Hall made the disposition of the debt which is in dispute here, she signed in the presence of a lady, Mrs. Taylor, who was called in as a witness to the transaction, the following statement, (called by Dr. Cook an endorsement,) which was written below the bond. "New York, November 9th, 1857. I hereby cancel the above bond and give it voluntarily to Mrs. Janet Cook and her heirs." At the same time she cut off the signatures and seals. She retained the bond, delivering it to

Mrs. Albro, another daughter of hers, who kept it until she died, and Mrs. Hall subsequently got it from Mrs. Albro's executors.

The counsel of Dr. Cook insists that there is no competent proof of a trust; that the written statement is no evidence of one, and that, inasmuch as that statement is in writing, no parol testimony can be admitted to prove a trust in regard to the money. It is not necessary to a trust, that there should be any transfer of property, whether the fund be in the possession of the donor or of another; the property may still remain as it was, and the donor may constitute himself as the possessor, trustee of it. If a person, by a written instrument or by word, directs his debtor to hold the money due, in trust for a third person, and such direction is communicated to the debtor, an effectual trust in favor of the donee is created, especially where, as in this case, the debtor has acted on the direction and consented to the arrangement. Here, the fund was in the hands of Dr. Cook. When the bond was canceled, the money it was given to secure, was no longer a debt due to Mrs. Hall, but was a trust fund, held, as he claims, in trust only for his wife; as the complainant claims, held in trust for his wife and her children. The language of the declaration written on the bond, is not to be construed as it would be were it a transfer of chattels for value. In such case the words " and her heirs " would have no significance, but would be rejected, and Mrs. Cook would be held to have taken the property absolutely. But we are dealing with an acknowledged trust, and in construing a declaration of trust, a different rule is to be observed. The directing principle which governs this court in the exercise of its jurisdiction in regard to trusts, is the intention. "Trusts," said Lord Northington, in *Earl of Northumberland* v. *Earl of Egremont*, 1 *Eden* 446, " are to be ruled and governed according to the intent of the parties, where such intent is consistent with the rules of law, and the court will, from the general frame of a testament or settlement, collect the intent, contrary to the express words of a particular clause." In ascertaining the

donor's intention in this case, we are not confined to her declaration written on the bond. A trust of this property could have been created by parol. That written statement does not exclude parol evidence of the donor's intention. Her verbal declarations made prior to, and contemporaneously with the gift, and relating to it, are also competent evidence of her intention. In *Kilpin* v. *Kilpin,* 1 *My. & K.* 520, a trust of chattels was proved by the donor's verbal statements as to his intentions, as well as by his written entries. In *Forster* v. *Hale,* 3 *Ves.* 696, parol proof was admitted and considered in connection with written evidence, in determining whether there was a trust. In *Steere* v. *Steere,* 5 *Johns. Ch.* 1, where it was sought to establish a trust of land, Chancellor Kent received and took into consideration parol proof, to "explain the obscurity of the case by showing what was the understanding of all the parties concerned." He based the admission of the evidence on the loose and ambiguous nature of the written proof.

In the present case the parol evidence is not offered to vary any declaration or acknowledgment signed by Dr. Cook, but as additional (and even better, because more distinct,) proof of the donor's intention. By it, it is made clear whom she meant to designate by the words " her heirs," and also, what interest she intended that her daughter and her daughter's children respectively, should have in the trust fund. The witness Mrs. Taylor, above mentioned, testifies distinctly, that when Mrs. Hall called her to witness the cancellation of the bond, she said she wished her to see her cancel that bond, giving the interest to Mrs. Cook and the principal to her children. On cross-examination she says, that on that occasion, Mrs. Hall told her she gave the interest to Mrs. Cook and the principal to her children. Dr. Cook was present at the transaction narrated by Mrs. Taylor. He and Mrs. Hall were together in Mrs. Taylor's room, talking together before Mrs. Taylor was called in, and they were there together when the cancellation took place and the declaration was signed, and when the verbal statement of Mrs. Hall as to her

intention, was made to Mrs. Taylor. She further says, that it was said at that time that the money was to be invested, and the doctor and his wife were to have the interest. Mrs. Hall testifies that it was always the understanding that the boys were to have this money; that when her daughter got it, the witness told her she was to have the use of it, and it was to go to her children.

From this testimony, which is entirely uncontradicted, it is quite clear that the intention of the donor was that Mrs. Cook should have the interest of the amount of the bond debt for her life, and that after her death, the principal should go to her children.

The complainant and the defendants, James A. Eaton and Silas P. Cook, are each entitled to have from Dr. Cook, one-third of the amount of the bond, with lawful interest thereon from the date of the death of their mother. Dr. Cook denies the trust and that he made any payment to the complainant on account of it. No reference will therefore be necessary.

The complainant is entitled to costs as against Dr. Cook.